# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HENRI THOMPSON, individually; JAMES MILLER, individually;<br><br>    Plaintiffs,<br><br>v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a foreign corporation; Doe Individuals 1 to 10 and Roe Entities 1 to 10;<br><br>    Defendant. | 2:09-cv-00905-JCM-RJJ<br><br>**REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**<br><br>American Family's Motion for Sanctions Due to Counterdefendants' Spoliation of Electronically Stored Information (#197) |

This matter comes before the court for a hearing on American Family's Motion for Sanctions Due to Counterdefendants' Spoliation of Electronically Stored Information (#197). The Court previously denied this motion as moot (#245), but granted reconsideration of the motion at the hearing on July 3, 2012 (#288) on the Motion for Reconsideration (#250). Accordingly, the Court now considers American Family's Motion for Sanctions (#197), as well as Plaintiff's Opposition (#202) and Defendant's Reply (#206).

## **BACKGROUND**

Henri Thompson worked for American Family as an insurance agent. Thompson was terminated from American Family and began working for competing companies; first Insurance Outlet and later Allstate Insurance. While working for the competing companies, American Family believes Thompson was using American Family's propriety information, including customer information, to contact, solicit, and/or induce policy holders to cancel American Family

Insurance. American Family asserts that this behavior was in direct violation of the restrictive covenants which were in the agency agreement that Thompson signed with American Family.

On May 6, 2009, Thompson filed suit against American Family alleging a variety of claims. American Family filed separate counterclaims based on the allegations that Thompson wrongfully acquired, used, and disclosed American Family's trade secrets.

Thompson has since been instructed at numerous times to preserve all potentially relevant electronically stored information (ESI). First, on May 22, 2009, American Family notified Thompson by letter that she was obligated to preserve all information, including ESI. Then on June 30, 2009, at the Rule 26(f) conference, and July 10, 2009, in the discovery plan and proposed scheduling order, American Family reiterated its intention to seek ESI under Rule 26(f)(3)©. On July 17, 2009, American Family propounded its First Set of Requests for Production on Thompson. Within those requests were requests for ESI. On August 19, 2009, Thompson responded that all ESI was stored on her desktop which was left with American Family when she was terminated. American Family continued to pursue ESI from Thompson through the meet and confer process and then by filing a motion to compel on November 23, 2009. On January 7, 2010, the Court heard arguments regarding the procedure for retrieving ESI. The minute entry from that hearing expressly instructs the parties that: "In the interim no electronic stored information is to be disposed of." See Minutes of Proceedings from hearing on Jan. 1, 2010 (#112). The Court advised that it would reset a hearing for American Family's motion to compel and suggested the parties meet and confer to see if any of the outstanding disputes would be resolved. *Id*.

Thereafter, the parties did meet and confer and agreed that certain responses to interrogatories would be supplemented. One of the supplemented responses concerned Thompson's production of ESI. Thompson revealed that she has "two (2) computers for use at Ms. Thompson's office, which she purchased approximately February 2009." Thompson however, refused to turn over the computers for inspection based on confidentiality/privacy

1  objections relating to her work for Allstate.  Those objections were discredited on January 13,
2  2011, when Allstate sent a letter asserting that it had no interest in or objection to the searching
3  of Thompson's computers.  At that point Thompson, instead of producing the computers,
4  responded that she "has no computers to produce." See Letter Dated Jan. 24, 2011, attached to
5  Motion (#197) as Exhibit 9 .
6         On January 31, 2011, the District Court ordered Thompson to properly respond to
7  American Family's discovery requests and for American Family to clarify its discovery requests.
8  See Order Granting in part American Family's Motions to Compel (#172).  Pursuant to the
9  Court's Order, American family redrafted certain discovery requests to include the two
10 computers previously identified by Thompson.  The requested computers were to be produced
11 within 30 days.  On March 8, 2011, American Family sent a letter and then later telephoned
12 Thompson's counsel asking for the date and location where she intended to produce the
13 computers for production.  In response, Thompson did not provide any information concerning
14 the production of the computers. On March 14, 2011, the deadline for producing the computers,
15 American Family again attempted to contact Thompson about producing the computers, but
16 Thompson did not respond.
17         Then, on March 15, 2011, Thompson faxed American family a letter disclosing, for the
18 first time, that "[the] two computers have been taken to Indonesia when they were given by Ms.
19 Thompson to relatives in Indonesia." See Letter Dated March 15, 2011 attached to Motion
20 (#197) as Exhibit 17.  Two days later, on March 17, 2011, Thompson served her overdue
21 discovery responses on American Family.  In response to Request for Production No. 1,
22 Thompson reiterated that the computers "have been given to relatives of Ms. Thompson.  Those
23 relatives reside in Indonesia." See Thompson's Answers to American Family's Third Set of
24 Requests for Production, at 2 lines 14-23, attached to Motion (#197) as Exhibit 19.  Thompson
25 further indicated that the computers could be inspected, but "the inspection would have to be
26 done in Indonesia." *Id*.
27
28                                            3

1    American Family has now filed the instant motion moving to strike all pleadings filed by
2 Plaintiff and Counterdefendant Henri Thompson and Counterdefendant Henri Thompson
3 Agency, Inc. (Collectively "Thompson") as a sanction for Thompson's failure to preserve
4 electronically stored information.  American Family has also requested costs and fees associated
5 with bringing the motion.  Thompson opposes the motion on the grounds that the two computers
6 still exist, they are just in Indonesia and can be searched there, or alternatively, she has offered to
7 retrieve the computers from Indonesia.

## DISCUSSION

### I. Whether Thompson's Pleadings Should be Stricken

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Fjelstad v. Am. Honda motor Co.*, 762 F.2d 1334, 1337-38 (9th Cir. 1985).

When determining whether terminating sanctions are appropriate the Court considers: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Leon,* 464 F.3d at 958; see also, *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003).

The Court "need not make explicit findings regarding each of these factors." *Leon,* 464 F.3d at 958, (citing *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603(9th Cir.1988)).  However,  a finding of "willfulness, fault, or bad faith" is required. *Leon,* 464 F.3d at 958 (citation omitted). (dismissing claims for failure to preserve electronically stored information).  Further, the Court must consider less sever alternatives. *Id*.

**A. Bad Faith**

"[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F. 2d 943, 948 (9th Cir. 1993). "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon,* 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv*., 314 F.3d 995, 1001 (9th Cir.2002)).

In *Leon*, the plaintiff knew he was under a duty to preserve all data on his laptop, but deleted many files that he said were "personal." *Leon,* 464 F.3d at 959.  The plaintiff claimed his acts were merely negligent because he meant to wipe only "personal" information. *Leon,* 464 F.3d at 956. The Court found that the Plaintiff "did not have the authority to make unilateral decisions about what evidence was relevant in this case." *Leon,* 464 F.3d at 956-7.  The Court concluded that "the extraordinary measures to which [the plaintiff] resorted to destroy evidence relevant to this litigation merit a finding of bad-faith." *Leon,* 464 F.3d at 957.

In this case, Thompson was notified by American Family of her duty to preserve ESI as early as May 22, 2009, and the Court explicitly mandated the preservation of all ESI on January 7, 2010.  Instead of preserving or producing her computers however, Thompson gave her computers to her family in Indonesia where they are outside the jurisdictional reach of this Court. American Family correctly argues that by sending the computers to Indonesia, and not producing them by the production deadline, Thompson has deprived American Family of the ability to discover the ESI on those computers.  In response, Thompson contends that any ESI is still in existence because the computers are not destroyed, they are just in Indonesia.  Thompson asserts that the presence of the computers in Indonesia is not an issue because she can go to Indonesia to retrieve the laptops or American Family can use an expert she has located in Indonesia to inspect the computers.  Thompson's contentions and offer to go to Indonesia are misguided.  Thompson had a duty to preserve the information on her computers and instead she shipped them to

1  Indonesia.  As a result, the computers have been in the possession of persons not required to
2  preserve any information whatsoever.  Worse than the plaintiff in *Leon* who deleted some files
3  before turning over his computer, Thompson has completely failed to turn over either of her
4  computers. See *Leon,* 464 F.3d at 957.  Through her actions, Thompson willfully eliminated
5  American Family's ability to discover information on the two laptops.  Accordingly, the Court
6  finds she acted in bad faith.

    **B. Prejudice**

    "The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *Leon,* 464 F.3d at 959 (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F. 2d 60, 604 (9th Cir. 1988)).  Prejudice occurs when a party's refusal to provide discoverable information forces the requesting party to rely on incomplete and spotty evidence at trial.  *Leon,* 464 F.3d at 959.

    For example, in *Leon*, the Court found that "the types of files [the plaintiff] would have deleted out of privacy concerns would likly be at the heart of [the defendant's] defense were [the files] available." *Leon,* 464 F.3d at 960.  The plaintiff's spoliation "threatened to distort the resolution" of the case "because any number of the 2,200 files could have been relevant to [the defendant's] claims or defenses, although it is impossible to identify which files and how they might have been used." *Id.*

    Here, Thompson purchased the computers in February 2009, after she was terminated from American Family and began working at competing agencies.  See Thompson's Supplemental Answers, at 3 lines 15-19, attached to Motion (#197) as Exhibit 7.  She used the computers at Allstate from April 2009 until Allstate terminated her in September 2010.  The presence of information concerning the policyholders Thompson serviced while at American Family would have evidenced that she retained and used American Family's customer information after she was terminated.  Such information could range from compilation of

6

policyholder names, addresses, and phone numbers to information on the cars they drove, the coverage they had, or their policy expiration dates.  The computers also could have contained correspondence between Thompson and American Family policy holders or lists of the policyholders that canceled their American Family policies.  The prejudice of not having this information is compounded by the fact that Thompson did not preserve her business records, even thought that information was initially requested.  Thompson used a shredding service on a monthly basis to destroy her business records.  See Motion (#197), at 17 lines 20-23, citing Thompson Deposition taken March 29 and 30, 2011.  Accordingly, the Court finds that American Family has been severely prejudiced.

**C. Lesser Sanctions**

In reviewing whether the district court properly considered lesser sanctions prior to dismissing Leon's case, the Ninth Circuit examined: "(1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal." *Leon,* 464 F.3d at 960.

1.      <u>Feasibility of less drastic sanctions</u>

In *Leon*, the district court found that "less drastic sanctions are not useful" because a ruling excluding evidence would be "futile," and fashioning a jury instruction that creates a presumption in favor of the defendant "would leave [the defendant] equally helpless to rebut any material that [the plaintiff] might use to overcome the presumption." *Leon,* 464 F.3d at 960.  The same is true here.  Further, "[d]iligent parties are entitled to be protected against interminable delay and uncertainty as to their legal rights." *Hamlett v. Reynolds*, 114 Nev. 863, 865 (1998).  Therefore, terminating sanctions are appropriate when "the normal adversary process has been halted due to an unresponsive party[.]" *Id*.

Here, Thompson disposed of ESI while under a legal obligation to preserve it and that

information cannot be gathered from another source.  Further, American Family has gone though over three years of litigation without the benefit of this information.  Therefore, this factor weighs in favor of terminating sanctions.

### 2. Whether alternative sanctions were implemented

In *Leon*, this criterion was inapplicable because "Leon erased the files and ran the wiping program before the district court had an opportunity to compel discovery or otherwise order 'lesser sanctions.'" *Leon,* 464 F.3d at 960.  Here, the District Court held Thompson would be required to respond to a more tailored request, which American Family issued.  The Court has not had an opportunity to compel further production because the computers are no longer available.  Accordingly, as in *Leon*, this factor does not relieve Thompson from terminating sanctions.

### 3. Whether Thompson was warned

In *Leon*, the Ninth circuit held that this criterion was inapplicable because the destruction occurred before the court had any opportunity to warn.  *Leon,* 464 F.3d at 960.  Similarly here, the court had no opportunity to warn because Thompson disposed of the computers before the Court made a decision on the Motion to Compel.  However, from a practical standpoint, Thompson was warned per the Court's January 7, 2010 order directing the preservation of all ESI.  Thompson knew, or should have known, the consequences of failing to produce. Accordingly, this factor weighs in favor of terminating sanctions.

**D. The Remaining Factors**

The remaining factors include: the public's interest in expeditious resolution of the litigation; the court's need to manage its dockets; and, the policy favoring disposition of the case on its merits.

Both the public interest in expeditious resolution and the Court's interest in managing its docket would be well served by terminating sanctions.   This litigation began in May 2009. Further, American Family spent months attempting to obtain ESI only to learn at the end of

discovery that Thompson sent her computers to Indonesia. Thompson's failure to provide ESI to American Family has prolonged this case, wasting valuable judicial resources.

The policy favoring disposition on the merits also favors terminating sanctions because the case cannot be evaluated on the merits in the absence of the information sought by American Family.

**II. Award of Fees**

An award of fees is permitted for motions granted pursuant to the Court's inherent powers so long as the sanctioned party acted in bad faith. *Leon,* 464 F.3d at 961. In this case, Thompson acted willfully and in bad faith. Thompson's bad faith is further illustrated by her failure to disclose the fact that she gave away the computers until after the deadline to produce her computers. Thompson has not articulated any substantial justification for her conduct. Accordingly, American Family's request for fees incurred in bringing this Motion is granted.

**RECOMMENDATION**

Based on the foregoing, and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that American Family's Motion for Sanctions Due to Counter Defendants' Spoliation of Electronically Stored Information (#197) be **GRANTED**;

IT IS FURTHER RECOMMENDED by the undersigned Magistrate Judge that Plaintiff and Counterdefendant Henri Thompson and Counterdefendant Henri Thompson Agency, Inc.'s **COMPLAINT (#100) BE DISMISSED WITH PREJUDICE;** and that the **ANSWER TO DEFENDANT/COUNTER-CLAIMANT'S COUNTERCLAIM (#142) BE STRICKEN**.

**ORDER**

IT IS ORDERED HEREBY ORDERED that American Family's request for fees incurred in bringing this Motion (#197) is **GRANTED**.

IT IS FURTHER ORDERED that on or before September 17, 2012, Defendants shall file an affidavit of fees and costs incurred in bringing the Motion (#197).

1    IT IS FURTHER ORDERED that a response, if any, to said affidavit of fees and costs shall be filed on or before September 24, 2012.

DATED this 10th day of September, 2012

.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge